## Case No. 13,602.

### The SULTANA.

[1 Brown, Adm. 13.] [1]

District Court, D. Michigan. Feb., 1857.

SEAMEN—WAGES—CLERK OF A STEAMBOAT.

The clerk of a steamboat is a mariner, and entitled to a lien for wages.

Libel for wages. Libellant was hired and served during the autumn of 1856 as clerk of the Sultana, and claimed a lien for his wages.

WILKINS, District Judge. The clerk of a steamboat is a mariner, within the meaning of the law conferring a lien for wages. Curt. Merch. Seam. p. 5, and notes; The Prince George, 3 Hagg. Adm. 376; 2 Bouv. Law Dict. p. 405; Mills v. Long [Sayer, 136], referred to in 2 Dod. 105; Wilson v. The Ohio [Case No. 17,825]; Fland. Mar. Law, 354; Ross v. Walker, 2 Wils. 264; Trainer v. Superior [Case No. 14,136]. Decree for libellant.

## Case No. 13,603.

### The SULTANA.

[1 Brown, Adm. 35.] [1]

District Court, D. Michigan. March, 1858.

MARITIME LIEN—REPAIRS—AUTHORITY OF MARSHAL TO ORDER REPAIRS.

The marshal has no authority, as such, to direct repairs to a vessel beyond what are necessary to her preservation while in his custody; but if repairs are furnished upon the order of the master, the fact that he was, without the knowledge of the libellant, holding the vessel as custodian for the marshal, will not prevent a lien attaching.

[Cited in The Young America, 30 Fed. 790.]

Libel for dockage and repairs. It appeared that the Sultana was brought to the dock about the 5th of December, A. D. 1856, and was taken in on the 8th under a contract between the master and the libellant.

Wm. Gray, for libellant.
J. S. Newberry, for claimant.

WILKINS, District Judge. There is no doubt that the contract in this case was within the scope of the master's authority, and that the dockage was necessary, within the meaning of the law. The vessel had been seized under process of attachment on December 1st, and at the time she entered

[1] [Reported by Hon. Henry B. Brown, District Judge, and here reprinted by permission.]

the dock was in custody of the marshal, who had constituted Captain Appleby ship-keeper, to hold possession of the vessel while awaiting the further action of the court. Appleby was known to libellant as master of the vessel; he was not known to him as the deputy of the marshal. He evidently made the contract with libellant as master, and not as ship-keeper, as he had no right to do so in the latter capacity. Tyler, the deputy marshal, who had made Appleby ship-keeper at his own request, took possession of the vessel himself on the 15th of January, while she was still in libellant's dock.

At the time the contract was made and the vessel entered the dock, libellant had neither actual nor constructive notice that Captain Appleby had any authority from the marshal to hold possession of the vessel for him. Such being the case, the court will hold the vessel liable for the dockage and repairs furnished up to the 15th of January, when Tyler, the known deputy of the marshal, took possession of her. From this time libellant had notice that the vessel was in the custody of the law, and the subsequent repairs furnished by him constituted no lien. It is not within the power of the marshal to contract for repairs that are not absolutely necessary to the preservation of the vessel while in his custody. It is his duty simply to keep the vessel as he receives her, and he has no authority to expend money for alterations or repairs for the purpose of completing her equipment for navigation.

The third and fourth items of libellant's account, amounting to $1,750, are disallowed, and a decree granted for the residue. Decree for libellant.